UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ROBERT KELSEY, JR.,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Robert J. Jonker

Case No. 1:22-cv-280

**REPORT AND RECOMMENDATION**

    This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

    Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff was not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

    Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

    The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human*

*Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on August 13, 2020, alleging that he had been disabled since March 4, 2019, due to post-traumatic stress disorder (PTSD); chronic fatigue disorder; knee condition – total knee replacement; migraines; bilateral chronic hip pain; major depression disorder; chronic shoulder condition; anxiety; neck condition; and sleep disturbances.

(PageID.132–33, 277–78.) Plaintiff was 49 years old at his alleged onset date and 50 years old at the time he filed his application. (PageID.132.) Plaintiff had completed high school and had relevant work as a production supervisor. (PageID.52, 305.) After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).[1] On November 10, 2021, ALJ Kevin Himebaugh held a hearing at which Plaintiff and Richard Riedl, an impartial vocational expert (VE), testified. (PageID.60–91.) At the time of the hearing, Plaintiff amended his onset date to August 20, 2020. (PageID.298.) On November 22, 2021, ALJ Himebaugh issued a written decision denying Plaintiff's application. (PageID.39–54.) The Appeals Council denied Plaintiff's request for review on January 31, 2022. (PageID.25–27.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on March 25, 2022.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[2] If the Commissioner can make a dispositive finding at

---

[1] Plaintiff filed a previous application for DIB benefits on June 13, 2019, alleging that he became disabled as of March 4, 2019. Following a hearing, ALJ Cynthia S. Harmon denied the claim. (PageID.96–119.) The Appeals Council denied Plaintiff's request for review of the decision on March 11, 2020. (PageID.124–26.)

[2] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. § 404.1545.

Plaintiff bears the burden of establishing the right to benefits, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2024, and had not engaged in substantial gainful activity since his amended alleged onset date. At step two, the ALJ found that Plaintiff suffered from severe impairments of: (1) femoracetabular impingement; (2) degenerative disc disease of the lumbar and cervical spine; (3) degenerative joint disease of the left knee with medial meniscus tear and small joint effusion

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

now status post total knee arthroplasty; (4) migraine headaches; (5) chronic fatigue syndrome; (6) restless leg syndrome; (7) obesity; (8) vasovagal syncope; (9) depression and anxiety; and (10) PTSD. (PageID.42.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ considered listings 1.15, 1.16, 1.17 and, with regard to Plaintiff's mental impairments, listings 12.04, 12.06, and 12.15. (PageID.42–44.) Regarding the "paragraph B" criteria of listings 12.04, 12.06, and 12.15, the ALJ found that Plaintiff had no limitation in the area of understanding, remembering, or applying information, marked limitations in the area of interacting with others, and moderate limitations in the areas of concentrating, persisting, and maintaining pace and adapting or managing oneself. (PageID.44.)

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except:

> [H]e can stand and/or walk up to four hours in an eight-hour workday, occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally look up and occasionally reach overhead bilaterally. He cannot have concentrated exposure to vibration, cannot work at unprotected heights or around moving machinery, and no commercial driving. The claimant can have occasional interaction with supervisors and coworkers, but no tandem or cooperative tasks and no work involving direct interaction with the public. He can concentrate, persist, and maintain pace to perform simple, routine tasks and make simple work-related decisions. The claimant can adapt to and tolerate no more than occasional changes in a routine work setting.

(PageID.45.)

The ALJ found that Plaintiff could not perform his past relevant work (PageID.52), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual

of Plaintiff's age, education, work experience, and RFC could perform the jobs of production inspector, production assembler, and office helper, approximately 355,000 of which existed in the national economy. (PageID.53.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ thus concluded that Plaintiff had not been disabled from his amended alleged onset date through the date of the decision.

## DISCUSSION

Plaintiff's sole issue on appeal concerns the ALJ's mental RFC. That is, he argues that the ALJ's RFC determination was faulty because it failed to account for all of Plaintiff's marked social interaction limitations. (ECF No. 13 at PageID.1800.) More specifically, Plaintiff contends that the ALJ's RFC finding that Plaintiff could have occasional interaction with supervisors and coworkers, but engage in no tandem or cooperative tasks, is at odds with his step-3 finding that Plaintiff had marked limitations in his ability to interact with others. (*Id.* at PageID.1805–06.)

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. § 404.1520(a). Listings "are descriptions of various physical and mental illnesses and abnormalities . . . defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). A claimant may meet a mental impairment listing (in this case 12.04, 12.06, and 12.15) by satisfying the so-called "paragraph B" criteria, by demonstrating either one extreme limitation or two marked limitations in four broad areas of functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), and 12.15(B). A limitation is "marked" if functioning in that area "independently, appropriately, effectively on a sustained basis is seriously limited." *Id.*, § 12.00F(2)(d). A

limitation is "extreme" if the claimant cannot function at all in the particular area. *Id.*, § 12.00F(2)(e). The area of interacting with others, which addresses a claimant's abilities to relate with coworkers, supervisors, and the public, includes functions such as "cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating and sustaining conversation; . . . [and] keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(2). Here, the ALJ explained his finding that Plaintiff was markedly limited in the area of interacting with others as follows:

> Regarding the claimant's ability to interact with others, the record documents his reports of an isolative lifestyle at times and difficulty getting along with others due to irritability and anger issues. The claimant endorses anger issues and the few therapy sessions found in the record indicate working on coping skills to address anger. He reports difficulty being a passenger in a car preferring to drive versus ride. He has also referred to difficulty getting along with coworkers during previous employment. However, he is also able [sic] interact appropriately with medical professionals, go to the grocery store, spend time with family and friends, and utilize text, video chat, and the telephone to stay in contact with others (Exhibit B3E; B9E). The record supports marked limitations interacting with others.

(PageID.44.)

Citing the SSA's Program Operations Manual System (POMS), Plaintiff notes that a finding of a marked limitation means that the claimant "'cannot usefully perform or sustain the activity' in question." (ECF No. 13 at PageID.13 (citing POMS § DI 24510.063).) He thus contends that the ALJ's step 3 finding conflicts with his RFC finding that Plaintiff could interact with coworkers and supervisors on an occasional basis, which the Social Security Administration (SSA) defines as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

7

To the extent Plaintiff contends that the ALJ's mental RFC finding was required to mimic or hew to his step 3 finding, the argument lacks merit. An ALJ's paragraph B findings do not constitute an RFC determination. SSR 96-8p, 1996 WL 374184, at *4. This is because the "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments." *Id.* An ALJ is not required to include a paragraph B finding as part of his RFC determination. *Vaughan v. Comm'r of Soc. Sec.*, No. 1:13-cv-1266, 2015 WL 5691003, at *5 (W.D. Mich. Sept. 28, 2015); *Fellows v. Comm'r of Soc. Sec.*, No. 1:14-cv-506, 2015 WL 4134699, at *6 (W.D. Mich. July 8, 2015). Moreover, as the court explained in *Shinlever v. Berryhill*, No. 3:15-CV-371, 2017 WL 2937607 (E.D. Tenn. July 10, 2017), while SSA rulings and the POMS define a "marked limitation" as "a substantial loss of ability," a "'"[s]ubstantial loss" cannot be precisely defined' because '[i]t does not necessarily relate to any particular adjective, number, or percentage.'" *Id.* at *5 (quoting 96-9p, 1996 WL 374184; SSR 85-15, 1985 WL 56857; and POMS § DI 25020.010.A.3 Mental Limitations). Thus, "a marked limitation is not synonymous with a specific functional restriction or RFC." *Haggard v. Berryhill*, No. 3:17-CV-99, 2018 WL 6003862, at *8 (E.D. Tenn. Nov. 15, 2018); *see also Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13-cv-1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) ("Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five. At step four of the sequential evaluation process, the ALJ correctly considered the effect of

Plaintiff's symptoms on her concentration, persistence, and pace when he allowed Plaintiff to be off task five percent of the time.").

The relevant inquiry, then, is whether the ALJ's RFC assessment considered the full impact of Plaintiff's anger symptoms from his PTSD. A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96-8P, 1996 WL 374184 at *1 (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). While the ALJ determines the claimant's RFC, that finding must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012).

In formulating the RFC, the ALJ evaluated Plaintiff's subjective symptoms in accordance with SSR 16-3p, 2016 WL 1119029, but concluded that Plaintiff's statements about his symptoms were not entirely consistent with the medical and other evidence in the record. (PageID.49.) Although the ALJ acknowledged Plaintiff's reported difficulties in interacting with others due to his PTSD symptoms and adopted the opinion of treating psychologist Lisa Mull, Psy. D., that Plaintiff had marked limitations in that area (PageID.48, 51), the ALJ found that a number of factors set forth in 20 C.F.R. § 404.1529(c) indicated that Plaintiff's symptoms were not work preclusive. For example, the ALJ noted that Plaintiff's treatment was "minimal and conservative," consisting of psychiatric and therapy sessions, anger management counseling, and medication. (PageID.48.) The ALJ further noted that the record disclosed "few therapy sessions." (PageID.44.) In fact, Plaintiff had only two therapy sessions with Dr. Mull, in November 2020 and February

9

2021, as well as one psychiatry appointment and one psychosocial assessment during the entire period at issue from August 20, 2020, to November 22, 2021. (PageID.447–48, 487–88, 1407–10, 1764–66.) The ALJ further noted that Plaintiff's PTSD was reported to be "stable in April 2021," his medications had remained the same, and he had not experienced any exacerbation in symptoms requiring more intensive treatment. (PageID.48, 440.) The ALJ's consideration of that evidence was a valid basis to discount Plaintiff's claimed limitations. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016) (noting that the plaintiff's "routine and/or conservative treatment for the allegedly disabling impairments" was a proper basis to discount his allegations of pain). The ALJ also pointed to Plaintiff's generally unremarkable mental status examinations (PageID.48–49), another proper consideration in evaluating a claimant's subjective symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *4–5.) Finally, the ALJ cited Plaintiff's reported activities of going to the grocery store, spending time with family, utilizing text, video chat, and the telephone to stay in contact with others, as well as his ability to interact appropriately with medical professionals, as indications that Plaintiff was not as limited as he alleged. (PageID.44.)  The ALJ appropriately considered this evidence in evaluating Plaintiff's symptoms. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 232 (6th Cir. 1990).

      Plaintiff contends that the ALJ's analysis is faulty because he "cherry-picked" or mischaracterized the evidence in Plaintiff's function reports by omitting or ignoring Plaintiff's statements limiting his activities and describing the extent of his anger issues. For example, Plaintiff notes that his September 2020 and January 2021 reports qualified going to the grocery store to "sometimes," "with [his] wife," and "once a month or less." (ECF No. 13 at PageID.1808 (citing PageID.316, 356).) Plaintiff also points to his many statements in those reports indicating

10

that he disliked interacting with others, including his own family members at times, which, he says, the ALJ ignored. (*Id.*) Nonetheless, as limited as they were, the ALJ properly cited Plaintiff's activities as one basis suggesting that Plaintiff's symptoms were not as severe as he claimed. And while an ALJ may not "cherry-pick" select parts of the record to reach a result, *see Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (noting that "the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain") (citing *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (per curiam)), there is no indication that the ALJ did so here. The ALJ specifically recognized Plaintiff's reports of "an isolative lifestyle at times," "difficulty getting along with others due to irritability and anger issues," "road rage," "anxiety in crowds and when driving or driving with others," "hypervigilance," and "frustration." (PageID.44, 48.) However, he weighed Plaintiff's statements against other evidence in the record and determined that Plaintiff's symptoms, while severe, were not disabling. (PageID.48–49, 51.)

Plaintiff also contends that the record provides no support that Plaintiff can interact with supervisors and co-workers on an occasional basis because it "routinely" demonstrates that "Plaintiff struggled to effectively relate and communicate even within his own family." (ECF No. 13 at PageID.1807.) The records Plaintiff cites (PageID.447, 487, 829, 863, 1194, 1210, 1212, and 1765) do show that Plaintiff was easily angered at times when interacting with his wife, but also show improvement with medication and no anger issues at other times. (PageID.1194 (wife reports no anger issues lately although uncaring attitude); 1210 (although Plaintiff "easily triggered," reporting "some improvement since his meds were adjusted"). Moreover, they do not show that Plaintiff's symptoms precluded all interaction. For example, in July 2021, although "dreading" it, Plaintiff reported plans to attend an upcoming wedding. He also reported that his youngest son's

family had been living with him and his wife, and that, although he wasn't always pleased with how they raised their child, he tried to stay quiet about it if he could. (PageID.1765.)

The ALJ accounted for Plaintiff's marked limitation by restricting him to no interaction with the public, occasional interaction with supervisors and coworkers, and no tandem or cooperative tasks. These are significant limitations not only on the quantity of time that Plaintiff can interact with supervisors and coworkers (very little up to one third of the workday), but also on the quality of the interaction, essentially amounting to no more than superficial contact with supervisors and coworkers. *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *12 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) ("The Court agrees that the limitation to no tandem tasks is a qualitative limitation on social interaction. As such, this limitation adequately addressed the opinion of Drs. Waggoner and Voyten that Plaintiff be limited to superficial interaction with others."); *Collins v. Comm'r of Soc. Sec.*, No. 3:17 CV2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018), *report and recommendation adopted*, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019) (Tandem tasks "logically require more than superficial interpersonal contact. This is a restriction on the quality of interpersonal contact."). These limitations adequately address Plaintiff's marked limitations in interacting with others, as combined, they limit Plaintiff to minimal engagement with both supervisors and coworkers. Moreover, as Defendant notes, "talking" is "not present" as an activity or condition in two of the jobs the VE identified, production inspector (55,000 positions) and production assembler (120,000 positions). *See* Dictionary of Occupational Titles (4th ed. 1991), DOT 739.687-102, 1991 WL 680198; DOT 706.684-022, 1991 WL 679050. Such positions would thus involve much less than the maximum amount of time encompassed in the "occasional" interaction limitation.

In short, the ALJ was not required to credit fully Plaintiff's subjective complaints if they were undermined by other evidence in the record. *See Simons v. Barnhart*, 114 F. App'x 727, 732 (6th Cir. 2004) ("The ALJ . . . was not bound to accept Simons's subjective complaints if the evidence in the record demonstrated otherwise."). Here, the ALJ properly considered the entire record, including treatment records, examination findings, and Plaintiff's reported activities in assessing whether Plaintiff's subjective symptoms were fully supported and adequately articulated the basis for the social limitations. Although Plaintiff points to other evidence in the record that certainly could have supported a contrary decision, the Court must affirm the ALJ's findings "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Because substantial evidence supports the ALJ's RFC finding, this argument lacks merit.

## CONCLUSION

For the foregoing reasons, I recommend that the Commissioner's decision be **affirmed**.

Dated: December 29, 2022                                       /s/ Sally J. Berens
                                                               SALLY J. BERENS
                                                               U.S. Magistrate Judge


## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).